**DUFERCO INTERNATIONAL STEEL TRADING, Petitioner,**

v.

**T. Klaveness SHIPPING A/S, Respondent.**

**No. 01 CIV. 6438 LTS AJP.**

United States District Court, S.D. New York.

Feb. 11, 2002.

Piper Marbury Rudnick & Wolfe LLP by Stanley McDermott III, Esq., Greenberg Traurig LLP by Robert P. Stein, Esq., New York City, for Petitioner.

Healy & Baillie, LLP by John D. Kimball, Esq., New York City, for Respondent.

## MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

Petitioner Duferco International Steel Trading ("Petitioner" or "Duferco") petitions this Court to vacate, in part, an arbitration award entered on April 18, 2001, by a panel of arbitrators in New York (the "New York Award"), in favor of respondent T. Klaveness Shipping A/S ("Respondent" or "Klaveness"). Klaveness has interposed a cross-petition, seeking an order confirming the New York Award and awarding Klaveness its attorneys' fees and expenses in connection with this litigation. The Court has considered thoroughly all submissions and arguments made in connection with the pending petitions. For the reasons stated herein, Duferco's petition to vacate the award is denied, and Klaveness' cross-petition is denied to the extent it seeks an award of fees and expenses and is granted insofar as it seeks confirmation of the challenged aspects of the New York Award.

## FACTS

The following summary of relevant facts is drawn from the Petitioner's submissions. There are no material disputed facts.

Pursuant to a time charter, dated January 3, 1994, Klaveness chartered the vessel "ARISTIDIS," which is owned by Lifedream Shipping Co. ("Lifedream"), for a period of two to about four months. (See Pet. to Vacate Arb. Award, July 25, 2001, at ¶ 5; Decl. of Stanley McDermott III, Esq., sworn to July 17, 2001 ("McDermott Decl."), Ex. 3, Time Charter Party ("Time Charter") at 1, line 13.) The time charter specified no particular ports, but provided that "[t]he vessel shall trade in any part of the world ... via safe port(s), safe berth(s), ...." (Time Charter at 1, line 23.) On November 30, 1995, Klaveness

subchartered the ARISTIDIS to Duferco pursuant to a voyage charter, which specified the loading port as "one (1) safe port/safe berth Taranto[, Italy]," and "one (1) safe port/safe berth or safe mooring New Orleans[, Louisiana,]" as the discharge port. (McDermott Decl., Ex. 4, Voyage Charter at ¶¶ 10–11.)

The vessel encountered various weather-related problems during the loading in Taranto, resulting in additional expenses for maintaining the vessel at the berth, extra payments to the crew, costs of replacing damaged mooring lines, cost of repairs to damaged mooring equipment, and incidental expenses. (McDermott Decl., Ex. 2, The "ARISTIDIS" Final Award (the "London Award") at ¶¶ D, 6.) To recoup these costs, Lifedream brought arbitration proceedings in London against Klaveness in March of 1997, seeking to recover based on safe port/safe berth, implied indemnity, and other provisions of the time charter. (London Award at ¶ 17.) Klaveness notified Duferco of the nature and pendency of the London arbitration and sought to vouch-in Duferco to defend against Lifedream's claim.[1] (McDermott Decl., Ex. 1, Decision and Award ("New York Award") at 6–8.) Duferco declined the tender of defense. (Pet. to Vacate Arb. Award at ¶ 5.)

Klaveness denied liability in the London arbitration. (London Award at ¶ D.) The London arbitrators found, however, that the Taranto berth had been unsafe and awarded damages against Klaveness under the safe port/safe berth provision of the time charter for additional expenses occasioned by the events in Taranto.[2] (London Award at ¶¶ D, 29.) The London arbitrators also awarded Lifedream attorneys' fees and costs of the proceeding. (Id. at 3, ¶ 33.) Klaveness thereafter initiated arbitration proceedings in New York under the voyage charter, seeking indemnity from Duferco for the Taranto damages imposed by the London Award and certain costs incurred in connection with the discharge of the vessel in New Orleans, Louisiana. (New York Award at 2.) A majority of the New York arbitration panel found in favor of Klaveness with respect to the indemnity claim and awarded Klaveness $120,000, as an allowance toward its attorneys' fees and expenses. The panel also found in Klaveness' favor on the New Orleans claim. (Id. at 2, 18.) Duferco did not challenge the New York portion of the award. It paid that portion after Klaveness cross-petitioned for confirmation of the award, mooting Klaveness' cross-petition insofar as it sought confirmation of that aspect of the award. Duferco now seeks to vacate the

1. The "vouching-in" doctrine, or "tender of defense" procedure, has been explained as follows:

Vouching is a common-law device whereby a defendant notifies the vouchee, a nonparty alleged indemnitor, (a) of the pendency of the suit against him; (b) that if liability is found, the defendant will look to the vouchee for indemnity; (c) that the notice constitutes a formal tender of the right to defend the action; and (d) that if the vouchee refuses to defend, it will be bound in any subsequent litigation between them to the factual determinations necessary to the original judgment. Vouching helps to avoid duplicative litigation and the risk of inconsistent results in adjudicating indem-

nification claims. Vouching is reserved primarily for cases in which the vouchee cannot be impleaded because the vouchee is not subject to personal jurisdiction. An alleged indemnitor who is vouched in to a court proceeding may be subject to having the prior determination used against the vouchee in the subsequent indemnification action even if the vouchee does not appear and defend in the first action.

*Universal American Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1138 (5th Cir.1991) (internal citations omitted). *See also, SCAC Transport (USA), Inc. v. S.S. Danaos*, 845 F.2d 1157, 1161–62 (2d Cir.1988).

2. Klaveness and Lifedream stipulated that the expense amount involved was $150,000.

Taranto indemnity award and one-half of the fee award.

## DISCUSSION

*Petition to Vacate the New York Award*

 "The showing required to avoid summary confirmation of an arbitration award is high, ... and a party moving to vacate the award has the burden of proof." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997) (citations omitted). Section 10 of the Federal Arbitration Act specifies several narrow grounds, none of which is relevant here, for vacatur of an arbitration award. 9 U.S.C.A. § 10 (West 1999). Duferco instead seeks vacatur on the ground that the arbitrators acted in manifest disregard of the law, a judicially-created doctrine. *See DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir.1997). A party seeking vacatur on such grounds bears a "very stringent burden." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 24 (2d Cir.2000).

> [T]o modify or vacate an award on [manifest disregard grounds], a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.

*New York Tel. Co. v. Communications Workers of America Local 1100*, 256 F.3d 89, 91 (2d Cir.2001) (quoting *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998)). Duferco asserts that the majority of the New York arbitration panel

disregarded principles of collateral estoppel and issue preclusion in reaching its conclusion on the issue of the Taranto indemnity claim.[3]

 The majority of the New York arbitration panel concluded that Duferco was bound by the London arbitrators' factual determination that the Taranto berth was unsafe. They found that the issue of the safety of the berth was common to the time and voyage charters. The panel majority further found that Klaveness' attempt to vouch-in Duferco was appropriate and properly executed in that Klaveness had provided Duferco with sufficient notice and opportunity to defend against the claim that the berth was unsafe. (New York Award at 11.) The panel majority also held that Klaveness had vigorously represented Duferco's position in the London arbitration and that Duferco was bound by the London panel's finding that the Taranto berth was unsafe.[4]

Duferco argued in the New York arbitration, as it does again here, that it was not bound by the London Award because the time charter imposed greater obligations on Klaveness than the obligations imposed on Duferco under the voyage charter. Specifically, Duferco argued that, under a voyage charter, a vessel owner assumes the risk of foreseeable conditions of the chosen port. Duferco had a full opportunity to present this argument in the New York arbitration, and apparently did. The New York panel majority's Decision and Award, and the dissent thereto, make it clear that the panel considered Duferco's "named port" argument and rejected it, not because it considered the

---

**3.** "The doctrine of collateral estoppel (or 'issue preclusion') bars relitigation of a specific legal or factual issue in a second proceeding where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir.2001) (internal quotation marks and citation omitted).

**4.** *See* supra note 1.

matter foreclosed by the London award, but on its merits.[5] The majority rejected Duferco's arguments, concluding that the safe berth warranty was breached under the voyage charter and that Klaveness did not waive the safe berth warranty when it agreed in the voyage charter to Taranto as the loading port. The panel's conclusion, even if incorrect, is not an error "so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator." *Willemijn,* 103 F.3d at 13.

■ In holding for Klaveness on the indemnity issue, the New York panel neither ignored the vouching-in doctrine (which, as Duferco notes, is accurately stated in the Award) or the "named port" provision of the voyage charter (Duferco's arguments as to which are rehearsed at length), nor rejected any acknowledged principle of controlling law. Rather, the panel's majority took a different view than Duferco and the dissenter of the legal significance of the named port provision. While this is arguably indicative of legal error on the part of the majority, such error is not grounds for vacatur of the award: "mere error in the law or failure on the part of the arbitrators to understand or apply the law is not sufficient to establish manifest disregard of the law." *Zorra Transp., Inc. v. Seaboard Trading & Shipping,* No. 00 Civ. 2262(BSJ), 2001 WL 417688, at * 4 (S.D.N.Y. Apr. 24, 2001) (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir.1997) (internal quotation marks omitted)).

Nor is the panel majority's refusal to impose on Duferco the London panel's award of costs and fees indicative of fatal internal inconsistency in the New York panel's application of the vouching-in doctrine. While the New York Award's discussion of this issue ends with the broad statement that "Klaveness must not now be permitted to use the London award against Duferco offensively for vouching-in or collateral estoppel purposes," the sentence preceding that statement can be read to indicate that the panel was referring only to lack of prior adjudication of Duferco's obligations under the voyage charter. Because there is a plausible reading of the opinion and, when read in this manner, the panel's conclusion on the collateral estoppel issue with respect to attorneys' fees is not fundamentally inconsistent with its conclusion on the indemnity liability issue, Petitioner has failed to establish manifest disregard of law on the part of the panel majority. It matters not whether this Court would agree with the panel majority as a matter of law. *See Willemijn,* 103 F.3d at 13 (court "must confirm the arbitrators' decision 'if a ground for the arbitrator[s'] decision can be inferred from the facts of the case[,]' .... even if the ground for their decision is based on an error of fact or an error of law.... If there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award." (Citations omitted.)).

The New York Award evidences no manifest disregard of the vouching-in and collateral estoppel doctrines or of the law regarding application of "safe port/safe berth" provisions of "named port" charter parties. The panel majority applied collat-

---

**5.** Duferco's arguments are outlined in detail at pages 8–11 of the New York Award; the majority's discussion of Duferco's legal analysis is followed by the conclusion:

> We ... do not concur with Duferco's argument that Klaveness undertook significantly greater obligations in its time charter with

Lifedream than Duferco assumed towards Klaveness under the voyage charter. Duferco warranted the safety of the berth and we do not find that Klaveness waived that warranty when it agreed to Taranto.

(New York Award at 11.)

eral estoppel to the factual finding of an unsafe berth and then made its own findings regarding breach of the safe berth provision of the voyage charter between Klaveness and Duferco and the extent of Duferco's duty to indemnify under the vouching-in doctrine and the parties' voyage charter. The panel majority's decision concerning the legal fees is neither inexplicable nor indicative of manifest disregard of the law, given the panel's finding that the London arbitration did not determine the respective legal rights of the parties to the New York proceeding. While the New York award clearly demonstrates the panel majority's manifest disagreement with Duferco on the implications of the voyage charter's "named port" provisions for the parties' obligations under the safe port/ safe berth provisions of that charter, Petitioner has failed to establish that the panel's decision is in manifest disregard of the law. Duferco's petition to vacate in part the New York arbitration award is therefore denied.

*Cross–Petition to Confirm the New York Award*

■ "[T]he confirmation of an arbitration award ... merely makes what is already a final arbitration award a judgment of the court." *Yusuf Ahmed,* 126 F.3d at 23 (quotation marks and citation omitted). Duferco's sole challenge to the New York Award goes to whether the panel acted in manifest disregard of the law when it found Duferco had breached the safe berth provision of the voyage charter. For the reasons discussed above, the Court rejects that argument. Because no basis has been established to vacate the award, Klaveness' cross-petition is granted to the extent that it seeks to confirm the disputed portions of the award. *See First Interregional Equity Corp. v. Haughton,* 842 F.Supp. 105, 108 (S.D.N.Y.1994) ("A district court must grant a petition to confirm an arbitration award that is properly brought unless one of the bases [set forth in 9 U.S.C.

§ 10(a)] for vacating or modifying the award is established."); *In Matter of Cragwood Managers, L.L.C. and Reliance Ins. Co.,* 132 F.Supp.2d 285, 287 (S.D.N.Y.2001) ("If a barely colorable justification for the arbitration award exists, the award should be confirmed." (Internal quotation marks and citation omitted.)).

*Sanctions*

■ Klaveness' opposition and cross-petition papers include a request for an award of its attorneys' fees incurred in this proceeding, based on Duferco's alleged bad-faith refusal to pay the uncontested portion of the New York Award and Klaveness' contention that Duferco's petition to vacate the Taranto portion of the award was meritless. Acknowledging that there is no contractual provision entitling Klaveness to such fees, Klaveness argues that the Court should exercise its inherent powers or invoke Rule 11 of the Federal Rules of Civil Procedure as authority for such award. The Court finds no justification in the circumstances of this case for awarding Klaveness its fees pursuant to any inherent powers. Although the Court finds Duferco's legal position taken here unpersuasive, it is not so wholly frivolous as to justify an assessment of costs and fees. *Cf. Jamaica Commodity Trading Co., Ltd. v. Connell Rice & Sugar Co., Inc.,* NO. 87 Civ. 6369(JMC), 1991 WL 123962 (S.D.N.Y. July 3, 1991). Nor is such an award authorized in this case by Rule 11. Klaveness has not established its compliance with the procedural prerequisites of that Rule (*see* Fed.R.Civ.P. 11(c)(1)(A)); absent such compliance there is no predicate for the Court's consideration of any substantive basis under that rule for an award of fees.

The remaining authorities cited by Klaveness in support of its fee request do not bolster its position in this regard. The charter party at issue in *Trans–Asiatic Oil Ltd., S.A. v. UCO Marine Int'l Ltd.,* 618

F.Supp. 132 (S.D.N.Y.1985) included a provision for recovery of attorneys' fees as part of damages in an action brought thereunder. The court in that case denied the petitioner's additional request for an award of Rule 11 sanctions against the respondent and its counsel. *See Trans-Asiatic,* 618 F.Supp. at 137. *See also Shipping Transp. Enterprises Ltd. v. Transatlantic Petroleum, Ltd.,* 1991 WL 105223, 1992 A.M.C. 663 (S.D.N.Y.1991) (attorneys' fees and costs awarded pursuant to charter party provision; court does not reach propriety of Rule 11 sanctions).

Accordingly, Klaveness' request for an award of its attorneys' fees is denied.

### CONCLUSION

For the reasons discussed above, Duferco's petition to vacate the New York award is denied. The Taranto and attorneys' fees aspects of the New York Award are confirmed, and Respondent's request for an award of its attorneys' fees incurred in this proceeding is denied.

SO ORDERED.